IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| In The Matter of The Search of The Cellular Telephone Assigned Call Number 802-376-6903. | Case No. |

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 FEB 25 PM 2: 43

CLERK

BY_____
DEPUTY CLERK

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Seth M. Fiore, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 802-376-6903 ("the Target Cell Phone"), believed to be in the possession of Jahlil M. MARSH, whose provider is U.S. Cellular, a wireless communications service provider that is headquartered at 8410 West Bryn Mawr Avenue, Chicago, Illinois 60631. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am employed by the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), and have served as an HSI Special Agent for the past eleven years. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am presently assigned to the HSI office in Burlington, Vermont, whose geographic jurisdiction encompasses the District of Vermont. I have received extensive training provided by the Federal Law Enforcement Training Center and HSI in the investigation and enforcement of laws of the United States. I have participated in numerous criminal investigations regarding violations of federal narcotics, firearms, child exploitation, and immigration laws. In connection with my duties as an HSI Special Agent, I have participated in various aspects of investigatory work, including but not limited to undercover surveillance and undercover narcotics purchases, and I have participated in several narcotics-related arrests and the execution of many narcotics-related searches. I have also reviewed and developed information from cellular telephones to further investigations.

4. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, records, and reports pertaining to this investigation, and information obtained from other members of law enforcement and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 21 U.S.C. §§ 841(a) and 843(b), concerning distribution of heroin and fentanyl, and the use of a communication facility to commit, cause, and

facilitate such distribution, have been committed, are being committed, and/or will be committed by MARSH and/or others associated with the Target Cell Phone. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B. Further, there is probable cause to believe that the Target Cell Phone has been used and will be used as an instrumentality of the offenses listed above. Accordingly, there is probable cause to believe that location information relating to the Target Cell Phone will constitute or lead to evidence of such crimes, fruits of such crimes, or instrumentalities of such crimes.

6. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. HSI is conducting a criminal investigation concerning MARSH and others regarding violations of 21 U.S.C. §§ 841 and 843(b) through the distribution of controlled substances, as well as the use of communication facilities to facilitate such distribution. During this investigation, which began in or about February of 2021, MARSH sold suspected heroin and/or fentanyl in the course of a controlled purchase involving the Target Cell Phone. As set forth below, the controlled purchase was arranged via a source of information (SOI #1)[1] who contacted the seller via the Target Cell Phone.

---

[1] SOI # 1 has a 2014 felony conviction for conspiracy to distribute narcotics and for two subsequent violations of federal probation. SOI #1 is working with law enforcement for monetary compensation, which is not contingent upon the identity of the target of the investigation.

Controlled Purchase

8.      In February 2021, HSI Task Force Officer John W. McGarghan was informed by SOI #1 that he/she had previously purchased fentanyl from MARSH. SOI #1 provided to TFO McGarghan what he/she believed was MARSH's cellular phone number, 802-376-6903 (i.e., the Target Cell Phone).

9.      During the third week of February 2021, TFO McGarghan and I met with SOI #1 at a pre-determined meeting location in the District of Vermont to arrange for the controlled purchase of fentanyl. SOI #1 said that, prior to meeting with us, he/she had contacted MARSH via text messages and phone calls to MARSH on his cellphone 802-376-6903 (i.e., the Target Cell Phone), and that MARSH had fentanyl for sale. SOI #1 told me and TFO McGarghan that MARSH requested to meet at a location in Milton, Vermont. Investigators reviewed copies of the text message chains SOI #1 indicated were with MARSH.

10.     SOI #1 traveled to meet MARSH in Milton while under continual observation by a surveillance team. In addition to surveillance, SOI #1 was monitored via an audio and video transmitting device. As observed by the surveillance team and consistent with recordings captured via these transmitting devices, SOI #1 exited his/her vehicle and entered an apartment. SOI #1 indicated afterwards that MARSH and two females were present in the apartment when SOI #1 entered. SOI #1 left the apartment and returned to his/her vehicle.

11.     Shortly afterwards, TFO McGarghan and I met with SOI #1 at a predetermined meeting location. SOI #1 turned over 2.03 grams of suspected fentanyl to me and TFO McGarghan, indicating that she/he had purchased the suspected fentanyl from MARSH. Vermont Narcotics

Investigation Unit (NIU) Detective Michael DeFiore field-tested a sample of the suspected fentanyl and it tested positive as an opiate.

12. SOI #1 further informed investigators that MARSH has since offered to supply him/her with approximately double the amount of fentanyl he/she received from MARSH in the controlled purchase described above.

13. Thus, there is probable cause to believe that the Target Cell Phone's prospective cell site information will lead to: (a) the identification of individuals involved with the trafficking of heroin and/or fentanyl, including MARSH and others; (b) the identification of physical locations at which illegal drugs are offloaded, stored, and/or distributed; and/or (c) the identification of locations where drug proceeds are stored, deposited, or concealed.

Target Cell Phone's Provider Information

14. In February 2021, I used the Consolidated Lead Evaluation and Reporting (CLEAR) database, which I have found to be reliable in the past, to determine which cellular provider services the Target Cell Phone. Using CLEAR, I found that the Target Cell Phone, 802-376-6903, was assigned to U.S. Cellular.

Background Regarding Cellular Devices and Drug Trafficking

15. In my training and experience, I have learned that U.S. Cellular is a company that provides cellular communications service to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking

technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that U.S. Cellular can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on U.S. Cellular's network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that U.S. Cellular can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as U.S. Cellular typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18. Also based upon my training, experience, and conversations with other law enforcement officers, I know that:

a. An individual's cell phone is often an indispensable piece of technology that is regularly carried on a person whenever the person is out of their dwelling and engaging in society. The location of a person's cell phone at any given point in time may therefore be probative of the person's actual location at that time.

b. Today's cellular telephone is a data rich personal computer that has become integrated into a person's everyday communication habits. People utilize these phones not only to place and receive voice calls, but also to communicate via text message, email, instant chat, and internet-based social media services. People routinely use their phones to conduct other internet-based activities such as banking and accessing news media sites.

c. Individuals involved in the commission of criminal acts, much like the broader population, typically utilize their cellular phones as productivity tools, communication tools, and for personal amusement. Persons who commit crimes together often use cellular phones to plan criminal activities, coordinate the execution of criminal activities, and discuss the aftermath of those activities. Persons who commit crimes, whether with co-conspirators or alone, often utilize cellular phone technology to discuss their crimes with others, and to share information regarding the police's knowledge (or lack thereof) of such crimes.

d. Dealers in regulated drugs have conversations with their sources of supply, customers, and other individuals associated with illicit drug trafficking. These conversations are related to the processing, transportation, storage, ordering, sale and distribution of controlled substances. Dealers in regulated drugs will engage in these conversations over the telephone or in person, commonly from their residence, place of employment, or other locations where they might have an expectation of privacy. Often sales of regulated drugs are set up through telephone calls before person to person contacts and sales are made. These communications often occur on the telephone, or via text message, email, instant chat, and internet-based social media services.

e. Dealers often control or direct the location of where the meetings or conversations will occur. The dealer will often attempt to move the meeting site

with little or no notice. This is done in an attempt to avoid monitoring and detection by the police.

 f. The sale and distribution of drugs is an ongoing enterprise. During the course of a criminal investigation there are often more than one meetings between an undercover officer, Cooperating Subject ("CS") or drug customer and the target(s) of the criminal investigation. At these meetings the target and the officer/CS/customer will discuss criminal activity.

 g. In order to keep track of their illegal enterprises drug traffickers use cell phones, smart phones, computers or other electronic devices, which they usually maintain at their residences or on their persons to track drug business transactions. Drug traffickers utilize their cell phones, smart phones, computers or other electronic devices to maintain updated address and telephone directories of their customers. Drug traffickers utilize their cell phones, smart phones, computers or other electronic devices to monitor such things as recent and historical sales, proceeds from these sales, the quantities of drugs that are sold, ordered and purchased in the course of their operation, and of transactions that lead to outstanding debts from their customers. Drug dealers also communicate with their sources of supply using this technology.

 h. Dealers often frequently change the locations where they stay and/or sleep, frequently several times a day. They do this to avoid detection by law enforcement or because of other unforeseen logistical reasons. It is also common for drug dealers to sell drugs from one location but sleep and/or stay at another location; to avoid detection by law enforcement.

 i. Dealers usually keep their cell phones on their persons for several reasons, including: to keep in constant contact with their customers and sources of supply, to prevent the phones from being stolen and to avoid others from accessing their phones.

 j. It is possible for dealers (and the general public) to obtain a new cell phone and have the carrier "port" the same phone number over to the new phone. The new phone may have different identifying numbers including the ESN (Electronic Serial Number), MEID (Mobile Equipment Identification), IMEI (International Mobile

Equipment Identify) and IMSI (International Mobile Subscriber Identify) but be associated with the same phone number the customer originally had.

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). I request that the proposed warrant allow the government to obtain prospective location information for a period of thirty (30) days. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the Target Cell Phone, without geographic limit, for a period of thirty (30) days pursuant to 18 U.S.C. § 3123(c)(1).

20. This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." In this case, such an order would be appropriate because the warrant relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation.

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give

that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct U.S. Cellular to disclose to the government any information described in Attachment B that is within the possession, custody, or control of U.S. Cellular. I also request that the Court direct U.S. Cellular to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with U.S. Cellular's services, including by initiating a signal to determine the location of the Target Cell Phone on U.S. Cellular's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate U.S. Cellular for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

24. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the

targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## CONCLUSION

25. Based on the forgoing, I respectfully request that the Court issue the proposed warrant.

Dated at Burlington, Vermont, this 21 day of February, 2021.

_____
Seth M. Fiore
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on this 25th day of February, 2021.

_____
HON. JOHN M. CONROY
United States Magistrate Judge
District of Vermont